Good morning. My name is Eric Zapporin and I am here on behalf of Appellant Deputy Jason Gentempo of the Denver Sheriff's Department. May it please the Court, I would like to reserve three minutes for rebuttal if I have the opportunity to do so. I am here to respectfully request that the Court reverse the District Court's denial of qualified immunity related to the appellee's claim of excessive force. Specifically, we are here to request a reversal of the District Court's finding that the law was clearly established such that it was beyond debate that Deputy Gentempo violated Serafin Finn's rights under the 14th Amendment as a pretrial detainee. By using force, after Mr. Finn ignored a command to stop spitting, and then spitting in the Deputy Gentempo is here today to simply ask the Court apply the same qualified immunity process that it would apply to a Denver Police Department officer who is accused of using excessive force under the Eighth Amendment, and that there is no carve-out exception related to qualified immunity for claims brought against pretrial detainees. The essence of the argument made by and the cases that they rely on, as well as the District Court relied upon, is that Mr. Finn did not pose a threat to Deputy Gentempo, given that he was restrained in leg irons and in handcuffs. But those restraints did nothing and could do nothing to prevent the chosen method of assault by Mr. Finn. Spitting in someone's face is just not one of the most degrading and dehumanizing things you can do to a person. It's an assault under Colorado law. Which could be charged. And it was in this case, Your Honor. And isn't that the remedy? That's one of the remedies, Your Honor, but certainly the officer's need to protect himself, to protect the security of the situation, to protect his fellow deputies, is certainly another consideration. Now you're arguing facts. And what the District Court, there are a number of paragraphs, a jury could conclude. For one thing, a jury could conclude that the deputies punching this man and flipping his wheelchair onto the pavement was unrelated to purported interest and, as you say, restraining that activity. Similarly, a jury could conclude that the use of force was excessive. That's Johnson v. Jones, isn't it? You're arguing sufficiency of evidence. And we're not here to argue sufficiency of evidence. In fact, we are not challenging prong one of the qualified immunity analysis. We're not here to argue that Judge Sweeney got the facts wrong. We're not here to argue that her analysis was flawed in terms of finding a constitutional violation. We are here for the limited purpose of, if we accept the fact that this is a constitutional violation, that the law was simply not clearly established to put the officer If a jury could find that it was unrelated, as the District Court says, and that it was just an act of rage, then you're saying there wouldn't be clearly established law that just because you're angry about something, you can't strike someone in a wheelchair who's handcuffed? Well, what I'm saying is the jury is going to have the opportunity to consider the first prong of the qualified immunity analysis, that being whether or not there's a constitutional violation. And if a jury does conclude that this was an act of rage, that this was an act of liability for Deputy Gintempo, but they won't be asked the second part of that equation, which is the clearly established equation, which is what Judge Sweeney was tasked to do, which she didn't do in a proper manner. The fault of Judge Sweeney was her failure to provide any case that was sufficiently similar to the facts presented to Deputy Gintempo. So that's your position, that if the jury found that, that it was an act of rage, and that it was not clearly established that you can't strike someone in a fit of rage who's handcuffed in a wheelchair. No cases involving those facts, so therefore no liability. My only discrepancy with that, Your Honor, is that the jury, and I've tried a number of qualified immunity cases, and I've never seen a case where a jury's been allowed the opportunity to decide qualified immunity. I'm agreeing with you on that. Okay. So what I'm saying is the failure here was that even if Judge Sweeney determined that there was a constitutional violation, that's only half the analysis. The second part of that analysis that she has to go through, as mandated by this Court, as mandated repeatedly by the United States Supreme Court, especially in the last few years, in Mullinex v. Luna, White v. Pauley, City of Toleco v. Bond, is that she was mandated to find a case that was sufficiently similar that would have put my client on notice that what he was doing violated the 14th Amendment, absent an obvious case of egregiousness. So you get a free strike rule in a spitting case? Well, I don't know if I would characterize it as that, Your Honor, but what I would characterize it as, the parties have conceded there was no Tenth Circuit case that deals with the facts that were sufficiently similar to this one. The District Court wasn't able to come up with a case that was sufficiently similar either. What is being argued by the appellee, which not even the District Court adopted, is that it was per se clearly established because Bell v. Wolfish in 1979 mandated that punitive force could not be used against pretrial detainees. But accepting that premise would be a violation of the Supreme Court's repeated mandate to not decide these cases at too high a level of generality. That would be akin to deciding a Fourth Amendment objective reasonableness case on those grounds alone. That Graham v. Connor says you can't use force that's objectively unreasonable. If a District Court would define that as part of their analysis, then that's the end of the analysis. Why isn't the right frame for this case that the prisoner was subdued and not a threat? And it is degrading and potentially dangerous to get spit on, but I think both his arms and feet were restrained and he was in a wheelchair. So he really wasn't a physical threat other than what he did. And certainly he was substantially restrained. So it seems to me that the most obvious thing to do would be to step back and put the towel over his head, which they did, rather than use potentially punitive force. Let me restate that. Isn't this just the infliction of force on a subdued inmate? I mean, I think that's more or less their framing. What's wrong with that? I'll get to that in one moment, but prefatory comment quickly. This was not just simply a spit. This was a spit from a gentleman who had hepatitis C. This was a weaponized assault. Well, he didn't know that at the time. Correct, Your Honor. He did not know that at the time. So we can't consider that as part of his frame of reference when he struck the man in the wheelchair. I agree with that, Your Honor. But I think that in that population that he's dealing with, I think the perceived training of the risk of spitting on someone's face in this particular setting with this particular population is an enhanced risk. Getting to your point, Judge Timkovich, yes, the point that the district court has relied on and that the appellee has relied on is the cases that they presented for clearly established law talk about individuals who are in restraints and the key part is and effectively subdued. They cite to Casey v. City of Federal Heights. They cite to Weigel v. Broad, McCoy v. Myers, which is an egregious beating of an individual in a motel room who's unconscious and is being struck by officers. But the distinction with this case, Your Honor, is that yes, there were leg restraints. Yes, there were handcuffs. But those restraints do not in any way restrain or subdue Mr. Finn's ability to spit and assault the officers. That's why you step behind him for the other deputy's resistance trying to hold the wheelchair up and facing him. He could have spit in him 10 more times the way that the deputy handled it instead of just stepping behind the wheelchair. And I'm not here to argue that perhaps there's other things that could have been done and perhaps better things that could have been done. But the point is whether what was done was objectively reasonable. But even more to the point, if what was done was clearly established to be a violation of Mr. Finn's 14th Amendment rights and we simply don't have any case that's been presented to this court suggesting from the Supreme Court or anything sufficiently factually similar from the 10th Circuit, and certainly not the weight of authority. They've provided you with cases from the 6th, 7th, 8th, and 11th Circuits. So we certainly don't have the weight of authority here. And relying simply on Bell v. Wolfish or this broad proposition in the law is simply not what the Supreme Court mandates when we're talking about these types of cases. Now, absent an obvious and egregious violation. So why can't the court say that's exactly what I see when I watch that video? And the district court did not do that. This court certainly can do that upon reviewing the record. It can make rulings that are not base its findings on rulings not made by the district court. But I would caution against that. Judge Timpovich, in Colbruno v. Kessler, you talked about the obvious case and the egregious case. And you made it very clear that those cases are the exception. They're the rare case. It's an exceedingly narrow exception with cases...  Yes, it was, Your Honor. Yes, it was, Your Honor. And to be candid, my whole argument today is your dissent in Colbruno, which was that in that case, the panel, the majority panel held that Bell v. Wolfish provided clearly established law because the force was found to be punitive. You and your dissent said, no, that's not the way we look at this. We look at this, that's too broad of a general proposition in the law. And Mr. Colbruno failed to come forward with facts that were sufficiently similar to have put this officer on notice he was violating the 14th Amendment. But with respect to my senior colleague, we're stuck with Colbruno, not the majority opinion, not the dissent. Agreed. Agreed. But I would argue that the dissent in Colbruno was much more in line with the Supreme Court's mandate over the last nine years that this court and all circuit courts find cases that are sufficiently similar in nature and don't rely on broad propositions of the law. How broad can it be to say the force was punitive? How is any deputy supposed to glean anything from that general proposition of the law in terms of preventing future misconduct? And so that's the argument here is again that... I am not without sympathy to your client, but if you look at that video, it strikes you as punitive. And... Just from a man on the street view of it. And I think the video, if this case were to proceed to trial, I think with some explanation, with some testimony to support it, with some additional facts, you're faced with facts too that we have to accept here for purposes of today that we don't believe were in dispute, that have been found to be in dispute. And I think the video can be tempered a bit with some explanation behind it. But I understand where you're coming from, Your Honor. I'm at three minutes. I'd love to reserve that time for rebuttal absent any questions. You may. Thank you. That's the closest I've ever seen someone come to hitting the mark. It's the best I've ever done. Good morning, Your Honors. May it please the Court. My name is Omid Asmouda on behalf of the Estate of Finn. On summary judgment, the District Court correctly denied qualified immunity to Deputy Gintempo after a hearing           after finding that Deputy Gintempo, as we've discussed a little bit this morning, or at least a reasonable jury could find that Deputy Gintempo punched Mr. Finn twice in the head with a closed fist and then slammed him to the pavement all while Mr. Finn was handcuffed, shackled at the ankles and seated in a wheelchair. The only issue before this Court is whether Deputy Gintempo's unconstitutional conduct violated clearly established law. And for two independent reasons this Court should affirm. First, as Judge Phillips was mentioning earlier, the District Court made a factual finding that a reasonable jury could conclude that Deputy Gintempo's conduct was punitive in nature. It was not rationally related to any legitimate government interest and it was arbitrary. And under not just Bell v. Woolfish, under Bell, Blackman, Colbruno and a series of similar cases that followed all in this circuit, punitive force violates clearly established law full stop. And even if the District Court didn't make that finding, if this was merely an excessive force case as opposed to punitive, then still, any reasonable officer knows that it is unlawful to pummel a 60-year-old man seated in a wheelchair with his arms and legs tied together. You agree, though, that your now deceased person engaged in dangerous conduct himself, don't you? I don't know if I could see that it was dangerous. Maybe some remote possibility. Do you want to walk outside and let someone you don't know on the street spit in your mouth? No, of course not. You would agree that that would be dangerous for you to engage in that conduct, wouldn't you? I would posit that it proposes some, possibly... Some risky conduct? Risky conduct would be better. And really, there's a factual finding in this case that I think describes it best, which is unsanitary. A reasonable jury can conclude that it's unsanitary. That's a sanitary way of saying it, but... I'm going to offer the sanitary way of saying it. But I think more important is to think about some of these cases, and I'm going to turn to the punitive force issue first, but if you look at Blackmun and you look at Hubbard, which is an unpublished decision that followed, those cases also acknowledge that there's some legitimate government interest out there that exists. In Blackmun, it was preventing an inmate from self-harm. In Hubbard, it was preventing an inmate from getting into fights with other inmates. And so, the existence of some legitimate interest is not necessarily the end of the analysis. As the district court did here, she acknowledged, spitting is unsanitary and maybe so. But still... It's an assault. It could be a criminal assault. It's battery. It's, you know, bodily fluids are dangerous and they, in retrospect, they were dangerous here. And, he, the plaintiff, he wasn't, he wasn't really subdued in the sense that we care about here. He was handcuffed, but he didn't have a spit mask on. So, he was still able to engage in this type of wrongful conduct and, um, can a reasonable officer halt, you know, halt the conduct, which is, and it did prevent a second spitting episode. I mean, it was, I saw the video too, but it halted the misconduct quickly. And, you know, what case out there says that an officer can't interrupt an assault through, you know, a use of force? Sure. So, if I were shooting Mr. Finn, it would also stop the conduct.  but striking Mr. Finn, punching Mr. Finn, and then slamming him to the pavement, according to the district court, which is a factual finding that's outside the jurisdiction of this court's  was not rationally related to that government interest in stopping the assault. According to the district court, a reasonable jury could credit that set of facts. And when that factual finding is made by a district court, not only is it unreviewable, but it's dispositive to this appeal. What if he would have grabbed him and put him in a chokehold? I think it would depend on the type of chokehold, Your Honor. I think there's a lot of decisions from this case, this circuit, that talk about the various methods that could result in asphyxiation, so I think that would be a bad case. When he was spitting on him, he needed to control his head. Instead of punching him, he grabbed him and put him in a headlock to keep him from turning his head around toward him. A headlock still, I think, goes too far. I think maybe a really close call is what Deputy Gintempo has testified he did throughout this case. He said that he went forward with an open-palm, two-handed gesture. I think if that were actually the facts of this case or a version that a reasonable jury could credit, this case would be much harder. But there's a significant difference in an open-palm, two-handed gesture and a closed-fist strike. I mean, a haymaker. The video depicts him loading up onto one side and then unleashing all that he's got, and I think that's significant and I think that played into the district court's finding that this was not. Don't we have to get, I mean, even giving to you that we expect our officers to act with some restraint and measure and level of measure, I mean, this happened very quickly. He was spit upon and he could have either been spit upon again or done something about it and he acted quickly and maybe he overreacted, but don't we have to give some grace for that? Not in this circumstance, because I think he overreacted in a sense that he acted off of rage, and that's the most intuitive view of this evidence and it's certainly one that a reasonable jury could credit. He took a fence and decided to retaliate with pain. Under Blackman, Colbruno, Knighton,  Hubbard, and probably more, that tool is simply not available to our officers. We hold them to a higher standard. And I would highlight Bloom and Hubbard in particular.  at page 16 of the response. Those cases are procedurally identical to this one, in which a district court made a factual finding that there was punitive force, regardless of whether the evidence might point in more than one direction, which I think is what the conversation this morning has revolved around. This court doesn't get to decide which way that evidence points. That's for the   It's up to the district court to    that evidence points in. It's up to the district court to decide which direction that evidence points in. It's up to the district court to decide which direction that evidence  in. It's up to the district court to decide which direction that  points in.    It's            in. It's up to the district court to   direction that evidence points in. It's up to the district                            court to decide which direction that  points                   court to decide      in. It's    court to decide  direction     We ask our  to make impulsive decisions and decide quickly to punish an  through pain or decide quickly to use excessive force against an  innocent person. We ask our district courts to  impulsive         against    We ask our district courts to  impulsive against an innocent  We ask our district courts to make impulsive decisions   quickly to             use excessive      force against an   We ask our  courts to  impulsive  quickly        person. We ask our     impulsive                 impulsive  quickly to use excessive